IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RODNEY MOSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | No.   13 C 5333 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| Chicago Police Officers TYRONE PENDARVIS, | ) | |
| Star #19370; NYLS C. MEREDITH, Star #12547; | ) | |
| RODERICK HUMMONS, Star #7749; MARTIN | ) | |
| G. MURPHY, Star #2212, OTHER UNKNOWN | ) | |
| OFFICERS, and the CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rodney Mosley sued four Chicago police officers, Tyrone Pendarvis, Nyls Meredith, Roderick Hummons, and Martin Murphy; unknown Chicago police officers; and the City of Chicago. Count I asserts a claim for false arrest in violation of the Fourth Amendment. Count II asserts a claim for failure to advise plaintiff of his rights required by <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), in violation of the Fifth Amendment. Count III asserts a claim for failure to intervene. Count IV asserts a claim for malicious prosecution. Count V asserts a claim for intentional infliction of emotional distress. Counts VI and VII assert that the City of Chicago is responsible for these violations under respondeat superior and indemnification, respectively. Defendants have moved pursuant to Fed. R. Civ. P. 56 for summary judgment on all counts. For the reasons stated below, defendants' motion is granted in part and denied in part.

## BACKGROUND

On January 22, 2012, the four defendant police officers ("defendants") executed a search warrant at 901 E.104th Street, Apartment C126, Chicago, Illinois. Adrienne Washington leased

the apartment and resided there with her son, Robert Owens, a narcotics dealer suspected in a shooting. The search warrant was targeted at Owens and allowed the seizure of a handgun, ammunition, and proof of residence.

When defendants arrived to execute the warrant, plaintiff was the only person in the apartment. Defendants immediately handcuffed plaintiff, who identified himself. Defendant Pendarvis claimed in his deposition that plaintiff said he lived at the apartment, and that when Washington entered the apartment she identified plaintiff as her husband. Plaintiff denies that he told defendants that he lived there, and Washington claims to have told defendants that plaintiff did not live there. Defendants asked plaintiff and Washington about Owens' whereabouts, but both said they did not know where he was. Defendants continued to search the apartment and found ammunition in a drawer. They asked plaintiff who owned the ammunition, and he stated it was not his. Defendants claim that plaintiff made incupatory statements, but he claims that defendants fabricated the statements.

During the search, defendants also found three pieces of mail sent to plaintiff at the apartment. One had been sent on May 8, 2009, another on February 25, 2011, and the final on June 6, 2011. Defendants also recovered an identification card from plaintiff, which listed the apartment as his address. However, Pendarvis and Murphy neither saw the identification card nor were told about the listed address during the search.

Ultimately, Pendarvis arrested plaintiff and he was charged with unlawful possession of firearm ammunition by a convicted felon. He was acquitted after a bench trial.

**DISCUSSION**

Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The movant bears the burden of establishing both elements. Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990). If the movant satisfies the burden, then the non-movant must set forth specific facts showing there is a genuine issue for trial. Nitz v. Craig, No. 08 C 334, 2013 WL 593851, at *2 (N.D. Ill. Feb. 12, 2013). The court "must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." Orton-Bell v. Indiana, 759 F.3d 768, 773 (7th Cir. 2014). At the summary judgment stage, a "court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence . . . ." Id.

Plaintiff does not contest summary judgment on all counts for defendants Hummons, Meredith, and unknown officers. Plaintiff also does not contest summary judgment for all defendants on his intentional infliction of emotion distress claim (Count V). Because defendants' motion is uncontested on these issues and claims, it is granted in part.

Defendants first argue that they are entitled to summary judgment on Counts I, III, and IV because Pendarvis and Murphy had probable cause to arrest plaintiff for possession of ammunition by a felon in violation of 720 Ill. Comp. Stat. 5/24-1.1(a) (2012). The crux of defendants' argument is that plaintiff had control of the apartment in which the ammunition was located and, thus, constructively possessed the ammunition. "Probable cause to arrest exists if, at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are

sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Brown v. City of Fort Wayne, 752 F. Supp. 2d 925, 945 (N.D. Ind. 2010) (internal quotation marks omitted). This test "for probable cause is an objective one." Penn v. Chicago State Univ., 162 F. Supp. 2d 968, 976 (N.D. Ill. 2001) aff'd sub nom. Penn v. Harris, 296 F.3d 573 (7th Cir. 2002). "[P]robable cause is normally a jury question. . . ." Smith v. Lang, 114 F.3d 1192 (7th Cir. 1997). A court may answer this question only "when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." Duncan v. Fapso, No. CIV.A. 05 C 1193, 2006 WL 328262, at *3 (N.D. Ill. Feb. 9, 2006) aff'd, 216 Fed. Appx. 588 (7th Cir. 2007) (internal quotation marks omitted). Where there is room for difference of opinion as to the facts or reasonable inferences, the probable cause question must be answered by the jury. Hogue v. City of Fort Wayne, 599 F. Supp. 2d 1009, 1024 (N.D. Ind. 2009) (internal quotation marks omitted).

Defendants claim that they had probable cause to believe plaintiff controlled the apartment because of his identification card, the three pieces of mail, and his presence in the apartment. Even though plaintiff's identification card listed the apartment's address, neither Pendarvis nor Murphy was aware of this fact. Pendarvis testified that no one even asked plaintiff for his identification card. Murphy testified that he did not recall if plaintiff gave his identification card to the police. Thus, the record establishes that neither Pendarvis nor Murphy ever saw plaintiff's identification card before arresting him. Further, there is no claim that another officer told them about the identification card before the arrest. Consequently, the identification card is not relevant to the probable cause inquiry because "the fact that the officer

4

later discovers additional evidence unknown to her at the time of the arrest is irrelevant to whether probable cause existed at the crucial time." Qian v. Kautz, 168 F.3d 949, 953-54 (7th Cir. 1999).

The mail is clearly relevant to the issue of probable cause. The police found three pieces of mail, all sent to the defendant at the apartment. This mail may indicate that plaintiff lived at the apartment at some point in the past. The age of the mail, however, is relevant to determining whether plaintiff actually controlled the premises at the time in question. People v. Ray, 597 N.E.2d 756, 759 (Ill. App. Ct. 1992). Here, the mail was postmarked May 8, 2009 (roughly thirty-two months before the search); February 25, 2011 (almost eleven months before the search); and June 6, 2011 (more than seven months before the search). Further, whether the mail is "merely personal" and "can be sent anywhere," such as a credit card statement, or is related to one's control over a premise, such as a cable utility bill, is relevant. People v. Valentine, 2011 IL App (1st) 102095-U, ¶¶ 51-52 (Ill. App. Ct. Sept. 30, 2011). Here, one piece of mail is addressed from "nelnet," which the envelope identifies as being in the business of "education planning and financing." A second piece of mail was sent by the Illinois Child Support services. Both of these are closer to personal mail because they have nothing to do with the recipient's residence. The final piece of mail came from "ECMC," but the envelope does not make clear what that is. Three pieces of old, largely personal mail cannot reasonably be thought to prove that defendant lived at the premises in questions.

The only other basis for probable cause that defendants identify is plaintiff's presence in the apartment. Mere presence in an apartment, however, does not demonstrate control of the premises or the items within it. See United States v. Morris, 576 F.3d 661, 667-68 (7th Cir.

2009) (explaining that proximity does not establish control). Indeed, guests often visit apartments and, although less common, may remain when the owners leave.

Although defendants do not raise it in their briefs, Pendarvis testified that plaintiff told defendants he lived in the apartment before they arrested him. If plaintiff made this statement, it would clearly be sufficient for probable cause. However, there is a genuine issue of material fact as to whether plaintiff actually made the statement.

Further, plaintiff has alleged that Pendarvis and Murphy were aware of facts that indicated plaintiff was not in control of the ammunition or the premises. Defendants went to the apartment specifically because they believed *Owens* had illegal ammunition there. Defendants had received information from a confidential informant that Washington lived at the apartment with Owens, no one else. Plaintiff and Washington testified that when the defendants were in the apartment, Washington said that plaintiff did not live there. Then, according to plaintiff, defendants tried to badger plaintiff into providing information about Owens' whereabouts and demanded repeatedly to know where Owens was. When plaintiff said he did not know, plaintiffs claims that defendants threatened to arrest him unless he told them of Owen's whereabouts. Defendants assert that they did not try to badger plaintiff into giving up Owens. These disputes over what happened in the apartment leading up to the arrest cannot be resolved by the court on summary judgment.

Thus, the undisputed facts do not establish that Pendarvis and Murphy had a reasonable basis to believe that plaintiff controlled the apartment, and there are genuine issues of material fact with respect to the probable cause analysis. Consequently, summary judgment cannot be granted on the probable cause issue.

Defendants next assert several arguments in opposition to plaintiff's Fifth Amendment claim (Count II). First, defendants claim that the Fifth Amendment applies only to federal actors. While this is correct, the protections of the amendment have been incorporated through the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 6 (1964). Second, defendants contend that plaintiff cannot rely on defendants' evidence to create a genuine issue of material fact. However, a party is free to rely on a theory of liability that contradicts his own deposition testimony. Stephens v. Gen. Nutrition Companies, Inc., No. 08 C 6296, 2011 WL 833340, at *3 (N.D. Ill. Mar. 3, 2011). A party is also free to rely upon supporting evidence submitted by the other party. Celotex Corp. v. Catrett, 477 U.S. 317, 332 (1986). Here, both parties have submitted contradictory testimony that creates a genuine issue of material fact as to whether plaintiff made inculpatory statements before being Mirandized. Third, defendants contend that Sornberger v. City of Knoxville, Ill., 434 F.3d 1006 (7th Cir. 2006), requires a plaintiff pursuing a Fifth Amendment claim to demonstrate that a criminal prosecution would not have been commenced but for the acquisition of the unlawful statement. This is a misreading of the case unsupported by the cited portion of the opinion. The genuine issue of material fact as to whether plaintiff made the inculpatory statements precludes summary judgment on plaintiff's Fifth Amendment claim.

Defendants also argue that Pendarvis and Murphy are entitled to summary judgment on plaintiff's claim for failure to intervene (Count III) because a failure to intervene claim must be based on the failure to prevent another officer's unlawful conduct. This contention is correct but meaningless in this case. Pendarvis and Murphy are not the same officer. Thus, they can be held liable for failing to intervene to stop the other's unlawful conduct.

Defendants contend that are entitled to qualified immunity on plaintiff's false arrest claim because a reasonable officer could have mistakenly concluded that probable cause was present. "Often termed arguable probable cause, qualified immunity in this context protects officers who reasonably but mistakenly believe that probable cause exists." Abbott v. Sangamon County, Ill., 705 F.3d 706, 714-15 (7th Cir. 2013) (internal quotation marks and citations omitted). For the reasons discussed above, there are genuine issues of material fact related to the probable cause issue. Depending on how these issues are resolved, defendants may or may not have had arguable probable cause. Therefore, these disputed facts preclude summary judgment. Hill v. Coppleson, 627 F.3d 601, 606 (7th Cir. 2010).

Finally, defendants claim that plaintiff's malicious prosecution claim cannot stand for two reasons. First, defendants argue that Pendarvis and Murphy did not engage in any post-arrest conduct. Police officers may be liable for malicious prosecution if they either signed a criminal complaint or "played a significant role in causing the prosecution of the plaintiff." Davis v. Fenimore, No. 09 CV 939, 2010 WL 1489988, at *4 (N.D. Ill. Apr. 13, 2010). Pendarvis signed the criminal complaint. Murphy allegedly helped Pendarvis fabricate inculpatory statements that were communicated to the prosecutor after the arrest. A reasonable trier of fact may conclude that such conduct played a significant, if not dispositive, role in the prosecutor's decision to proceed. Second, defendants argue that there is no evidence of malice. "It is well established that a jury can infer malice from an absence of probable cause." Williams v. City of Chicago, 733 F.3d 749, 760 (7th Cir. 2013). Here, as already explained, Pendarvis and Murphy may have lacked probable cause. Moreover, plaintiff has provided at least some evidence that Pendarvis and Murphy targeted plaintiff because they believed he might lead them to Owens, the target of

8

their search warrant. If proven, this would suffice to support a claim for malicious prosecution. Therefore, defendants are not entitled to summary judgment on this count.

## CONCLUSION

For the foregoing reasons, summary judgment is granted on Count V with respect to all defendants and on all counts with respect to defendants Hummons, Meredith, and unknown officers. Summary judgment is denied with respect to the other counts and defendants. Plaintiff's motion to strike ¶¶ 28 and 29 of defendants L.R. 56.1 statement of undisputed facts (Doc. 54) is denied as moot.

**ENTER:**

**May 15, 2015**

_____
**Robert W. Gettleman
United States District Judge**